(No. 25451.—

MAY L. SUTLIFF *et al.* Appellees, *vs.* W. B. AYDELOTT *et al.*
Appellants.

*Opinion filed April 17, 1940—Rehearing denied June 12, 1940.*

ALFRED W. BLACK, and ROBERT B. HORNER, guardian *ad litem,* for appellants.

RALPH DEMPSEY, and P. A. D'ARCY, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

This is an appeal from a final decree of the circuit court of Tazewell county, setting aside and terminating a certain trust created by May L. Sutliff and husband, Frank E. Lautz and wife, Ralph F. Lautz, Margaret I. Lautz, Ruth E. Lautz, Helen S. Lautz, W. E. Lautz and Ida Aydelott and husband, conveying certain real estate and certain shares of stock to W. E. Lautz, W. B. Aydelott and E. M. Sutliff, as trustees, upon certain trusts declared in the deed. The decree terminates the trust and restores to the creators title to said property. All of the grantors except W. B. Aydelott joined as plaintiffs, the husband of May L. Sutliff being deceased. W. E. Lautz is a plaintiff in his capacity as trustee and as an individual. The other plaintiffs are adult persons who may in the future have vested interests in the trust property as heirs-at-law of the grantors. The defendants are William Lautz, a minor son of F. E. Lautz, and W. B. Aydelott, individually and as trustee, and the Pekin Water

Works company, a corporation, the shares of which constitute a part of the trust property. The case involves a freehold and, therefore, the appeal comes directly to this court.

The question involved, here, is whether the use of the word "heirs" in the trust instrument is to be construed as a word of purchase or of limitation,—that is, are the provisions of the trust such as to result in vesting an interest in the persons who would be the heirs-at-law of the grantors as purchasers and thereby prevent a termination of the trust until all such persons may be ascertained.

Different words are used in the indenture conveying the real estate from those used in conveying the personal property. The real estate is conveyed to the trustees "reserving to themselves [the grantors] however, share and share alike, the rents, issues and profits thereof, for and during the period that said above described real estate shall be held in trust under the terms of this trust deed." After providing that the trustees shall receive the rents and profits and pay taxes and repairs they shall apply all net revenue to the use and benefit of the grantors "share and share alike, and the heirs of each of them, respectively, for and during the period that said real estate shall remain in trust under this deed." The trustees are likewise empowered to sell real estate from time to time and "to divide the net proceeds thereof among said beneficiaries above named and their heirs." The personal property (capital stock of Pekin Water Works Company) is conveyed by the indenture and the trustees "shall hold the same for and during the period of the natural life of the grantors herein and the life of the survivor of them; and within a reasonable time after the death of the last survivor of said [grantors] to convey to the heirs-at-law of the said deceased parties the several undivided interests of each of said decedents in said stock above described." The trust agreement also provides the trustees shall have full power and authority to vote the stock and "to sell, transfer and assign said stock as trustees

under the power of trust herein granted; but reserving unto the grantors and the survivor of them annually the net annual income and dividends thereon, share and share alike as tenants in common."

The grantors and the named beneficiaries are identical. All of the grantors are alive and join in the petition to terminate the trust. One defendant is the minor child of one of the grantors and one defendant the husband of one of the grantors. One of the surviving trustees joins as plaintiff and the other is a defendant.

The appellants claim that the word "heirs" as used in the trust instrument operates to vest in William Lautz, minor son of grantor, F. E. Lautz, and any other children of the grantors who may afterwards be born, an interest which will prevent the termination of the trust.

Since the words used in the trust instrument as affecting the real estate and personal property are different, their effect will be considered separately. The rule is well settled that where all the parties are capable of acting, they can compel the termination of a trust although its purposes have not been fully accomplished. *Burton* v. *Boren,* 308 Ill. 440; *Botzum* v. *Havana Nat. Bank,* 367 id. 539.

The interest of plaintiffs is claimed to be equitable, but the rule in *Shelley's case* applies to the equitable interests as well as legal interests in real estate, provided both the life estate and the remainder are of the same quality,—that is, both legal or both equitable. (*Wilson* v. *Harrold,* 288 Ill. 388; *Lord* v. *Comstock,* 240 id. 492.) The trustees, here, are to divide the net revenues of the real estate between the grantors, share and share alike, and the heirs of each, respectively, and in case of sale to divide the net proceeds among the grantors and their heirs. Since all the income and all of the proceeds of the sale are by the terms of the indenture to go to the grantors and their heirs, the rule in *Shelley's case* applies and vests the entire interest in the grantors, since the word "heirs" is used as a word of lim-

itation and not of purchase. The word indicates the quantity of the estate granted and not the persons who take it. *Aetna Life Ins. Co.* v. *Hoppin,* 214 Fed. 928.

In *Burton* v. *Boren, supra,* the settlor conveyed to a trustee, reserving an income for life, and then provided the subject matter "vest in and become the property of the heirs-at-law" of the grantor. It was held that the word "heirs" was a word of limitation and that no interest passed to such designated persons under the deed that would prevent the grantor from terminating the trust.

At common law, where the grantor conveys a life estate with remainder over, either mediately or immediately to his heirs, the latter do not take a remainder at all but the word "heirs" is regarded as defining or limiting the estate which the first taker has. In such case, the lineal heirs of the grantor take not a remainder but a reversion, and such reversion is by descent from the grantor and not by the deed. (*Biwer* v. *Martin,* 294 Ill. 488; *Akers* v. *Clark,* 184 id. 136.) The exception to this rule is where the trust is executory in character. (*Baker* v. *Scott,* 62 Ill. 86; *Bennett* v. *Bennett,* 217 id. 434.) Executory trusts are those in which a further conveyance or settlement is to be made by the trustee. (1 Tiffany on Real Property, p. 642.) The test as to whether a trust is executory is to determine whether the testator or settlor has acted as his own conveyancer and defines precisely the settlement to be made. If he has, the word "heirs" is one of limitation. If he has not, the trust is executory, and the word "heirs" is a word of purchase, and the persons coming within such definition have an interest in the property. (*Wilson* v. *Harrold, supra;* 1 White and Tudor Eq. Cas. 12, 13.) One of the tests to determine whether the settlor has acted as his own conveyancer is to ascertain whether the trust instrument purports to pass title directly to the beneficiaries or whether the instrument requires a trustee to make the conveyance. If the trust instrument requires the trustee to convey, it is presumed the trust

is executory and the rule in *Shelley's case* does not apply, and the heirs take as purchasers under the trust deed.

The case of *Lawrence* v. *Lawrence,* 181 Ill. 248, cited by appellants, was a case in which the trust instrument required the trustee to make a conveyance, and hence came within the exception of the rule. · In the indenture under consideration, so far as the real estate is concerned, there is no requirement that the trustees convey. The title is placed in the respective heirs by the trust instrument itself,—that is, by the act of the grantors,—and, therefore, the word "heirs" is one of limitation. The revocation of the trust by all of the grantors leaves the legal title in them, and the decree of the circuit court in so holding was correct.

The trust with respect to the personal property presents a different situation. In the first place, the rule in *Shelley's case* is inapplicable to personal property, (*Lord* v. *Comstock, supra; Smith* v. *Smith,* 254 Ill. 488;) and the actual intent may not be changed by construction. The language of the trust indenture with respect to personal property is also different; it provides that the stock shall be held until after the death of all the grantors, and after the death of the survivor the trustees shall convey to the heirs-at-law the several undivided interests in the stock. It also provides that the net annual income and dividends shall be reserved to the grantors and to the survivor of them. Under this language, there is no provision that the stock be subject to distribution among the original beneficiaries, but, on the contrary, it shall be held until the death of the last of the grantors, the income to be paid to the survivor of such grantors until the last one dies, in which case it is to be conveyed to the heirs of the grantors. This language indicates that eventually the heirs are to receive the actual *corpus* of the trust, and it is different from the language with respect to the real estate which carries no implication that the "heirs" will ever, in fact, necessarily receive the *corpus* of the trust. The intention being clear, and there being no rule of construction to apply as in the case of real estate, there was no power

in the court to terminate the trust with respect to the personal property, but the stock, or the proceeds of the stock, must be distributed at the proper time when the period of distribution arises. *Bennett* v. *Bennett, supra.*

However, the trust deed empowers the trustees to sell, transfer and assign the stock at any time, reserving to the grantors and the survivor annually the net income and dividends. The power to sell the stock and reserve the dividends would render it impossible to realize anything like its actual value and it would seem that the clear intention of this provision was meant to be that the grantors, and the survivor of them, should receive the dividends of the stock so long as it was unsold and receive the net income from a fund that might be created from a sale of the stock. Any other construction would be inconsistent with the language used. We think the court erred in permitting the termination of the trust with respect to the personal property and that the alternative relief prayed by plaintiffs to authorize the trustees to sell the stock, together with any stock dividends, should be granted. Appellees claim that under *Luthy* v. *Ream,* 270 Ill. 170, the trust affecting the stock of Pekin Water Works Company is void because the trustees have the right to vote all the stock for the election of directors and other corporate purposes. That was a case in which the owners of all of the stock put it into a voting trust and a person not the owner was given all the voting rights. In this case, the title to the stock is vested in the trustees and they, as owners, have the right to vote it. The case cited does not apply to the present situation.

The decree of the circuit court of Tazewell county in so far as it affects the real estate is affirmed, and the decree, in so far as it affects the personal property is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed herein.

*Affirmed in part, reversed in part, and remanded.*