(No. 36871.—

SYLVA ARNOLD *et al.*, Appellees, *vs.* LAURA JEAN BAKER *et al.*—(Phyllis Cummings Groll *et al.*, Appellants.)

*Opinion filed September 28, 1962.*

ADSIT, THOMPSON, HERR & STROCK, of Pontiac, and ROOT & WILDER, of Morris, for appellants Phyllis Cummings Groll *et al.;* BLACK & BLACK, of Morris, for appellants Francis Jane Noel *et al.;* and WILLIAM I. HYNDS, of Morris, for appellants Helen Jenkins *et al.*

DUNN & HAYES, of Morris, for appellees.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

Certain heirs of Estella I. Baker, who died in 1957, filed an action in the circuit court of Grundy County to partition a farm. Defendants Phyllis and Louis Groll, to whom she had devised the farm by her will, filed a motion to dismiss the suit. The motion was denied, and a decree of partition was entered finding ownership as alleged in the second amended complaint as amended. The defendants Groll, together with other defendants claiming an interest in the premises, appeal directly to this court. A freehold is involved.

The decedent acquired her title by deed from her father in 1908. One of her brothers, Francis, had been married and divorced, and had several children. The deed in question conveyed to Estella "during her life then to her heirs and providing she dies without issue then the share that would go to Francis P. Baker will go to his children and the children of Hattie Nixon Baker, his divorced wife."

Estella died without ever having had children. The brother Francis predeceased her leaving children surviving.

The sole issue presented is the legal effect of the deed to Estella Baker. The plaintiffs contend, and the lower court so found, that the grantor intended to convey the property to his daughter for life with the remainder to the heirs of her body, thus creating what would at common law have been a fee tail but which, under section 6 of our Conveyances Act (Ill. Rev. Stat. 1959, chap. 30, par. 5,) was converted to a life estate in Estella Baker with a contingent remainder to her subsequent issue and a reverter in the original grantor, should no issue be born. Since Estella died without ever having had issue, it was the finding of the trial court that the fee passed as intestate property to the heirs of the grantor.

Phyllis Groll and Louis Groll insist the grant was to Estella I. Baker and her heirs so as to create in the grantee, by operation of the rule in *Shelley's* case, an absolute fee which could be devised by her will. On the other hand, the defendants, Frances Jane Noel, Ellis L. Baker, Elsie Baker Walters, and Vera Baker Horton, referred to in the briefs as the Noel Group, allege the effect of the deed was to convey a life estate to Estella Baker with the remainder to her issue if subsequently born, and in the absence thereof, to the heirs of Estella Baker, excepting Francis P. Baker, whose share would pass to his children.

The final contention is advanced by Helen Jenkins, Edna Turner, and Bette Baker Glavan, defendants collectively called the Jenkins Group. They allege in the alternative that the deed gave a life estate to Estella Baker and either (1) the remainder interest to a group of "ascertainable individuals" who were described as Estella Baker's heirs, (2) the original grantor's reversionary interest to this same ascertainable group of individuals, or (3) the fee to those same individuals by reason of a gift over after the fee tail.

The first contention to be considered is that of the

Grolls, who insist that Estella acquired a fee simple title by operation of the rule in *Shelley's* case. Although abolished in Illinois in 1953, (Ill. Rev. Stat. 1955, chap. 30, pars. 186, 187), the rule was in force when the present deed was executed and delivered. It must be given effect, therefore, if it is applicable to the facts. It provides, briefly, that when a life estate is given to a person, followed by a remainder to his heirs, the heirs take nothing, but the life tenant takes the entire fee. (*Orme* v. *Northern Trust Co.* 25 Ill.2d 151. Docket Nos. 36509, 36510, 36512; *Vangieson* v. *Henderson*, 150 Ill. 119.) The word "heirs," when used in its technical sense, refers to all those persons generally who inherit from the ancestor, and when so used defines the extent or quality of the estate conveyed and does not vest any interest in the ancestor's kin. (*Richardson* v. *Roney*, 382 Ill. 528.) Being a word of art, its fixed legal meaning is presumed to have been intended unless it clearly appears from the instrument itself that a more restrictive group was anticipated, (*Carpenter* v. *Hubbard*, 263 Ill. 571; *Hege* v. *Provident Mutual Life Ins. Co.* 341 Ill. 559; *Lydick* v. *Tate*, 380 Ill. 616,) and when the word "heirs" is determined to have been used in its unrestricted sense, the rule in *Shelley's* case, in effect, converts the ancestor's interest into a fee without regard to the interest which the grantor expected him to take. *Porter* v. *Cutler*, 380 Ill. 215; *Hollenbaugh* v. *Smith*, 296 Ill. 558.

The rule applies, however, only where the gift in remainder refers to an indefinite line of succession, rather than to a specific class of takers. The remainder must be to the heirs of the first taker by the name of heirs as meaning a class of persons to succeed to the estate from generation to generation, and not to heirs as meaning or explained to be individuals. Where to the word "heirs" other words are added which so limit its meaning that it does not include the whole line of inheritable succession but only designates the individuals who are at the death of the life tenant to

succeed to the estate, and who are themselves to constitute the source of future descent, then the rule in *Shelley's* case does not apply. The estate limited to the heirs takes effect as a contingent remainder granted or devised to such heirs as purchasers. *Cahill* v. *Cahill,* 402 Ill. 416; *Orme* v. *Northern Trust Co.* 25 Ill.2d 151, Docket Nos. 36509, 36510, 36512.

The deed in the case at bar grants the remainder not to heirs generally but to a restricted class of "heirs." The language directing payment of Francis's share to his children excludes him from sharing in Estella's estate, and thus restricts the term "heirs" to a group ascertainable other than in strict accordance with the rules of descent. The grantor contemplated as remaindermen not an indefinite line of succession but a specific class of takers, the members of which might, under certain circumstances, be identical with the heirs but under other circumstances would be different therefrom. Thus if her brother had survived, he would have qualified as an heir but not as a member of the class described by the grantor. We think the proviso in this deed reasonably indicates that the grantor intended the word "heirs" to be merely descriptive of the persons who were to take the remainder upon termination of the life estate. The word was not used in an unqualified sense or according to its legal import, to include all who, upon the life tenant's death, would inherit from her as the stock of descent. It follows that the rule in *Shelley's* case can have no application to the present conveyance, and that the Groll contention must be rejected.

It is evident from what we have said with reference to the word "heirs" as used by the grantor that the position of the plaintiffs is likewise untenable. They insist that by referring to the possibility of his daughter dying "without issue," the grantor intended to provide only for the children of Estella Baker, and that the words "then to her heirs" should instead by read as "then to the heirs of her body."

With this we cannot agree. The reference to the brother's "share" compels the inference that the grantor used the word "heirs" to describe a group broader than issue. Francis could under no circumstances be the issue or bodily heir of Estella, and to read the word "heirs" as "heirs of her body" would be to given no effect whatsoever to the provision concerning "the share that would go to Francis P. Baker."

We conclude that by the word "heirs" the grantor meant those individuals who at Estella's death would succeed to her intestate estate, except that her brother Francis would be excluded and in his place his children were substituted for such share he otherwise would have received. Upon delivery of the deed the estate so limited took effect as a contingent remainder in such "heirs" as purchasers, and upon Estella's death it vested, with the exception indicated, in those persons who became her heirs.

The decree of the circuit court of Grundy County is reversed, and the cause is remanded with directions to enter a decree in accordance with the views expressed herein.

*Reversed and remanded,*
*with directions.*